**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: ) | |
| ) | |
| BEARCAT ENERGY, LLC ) | Case No. 17-12011 EEB |
| Debtor. ) | Chapter 11 |
| ) | |

**MOTION OF DEBTOR FOR AN ORDER (A) APPROVING PURCHASE AND SALE AGREEMENT AND AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, RIGHTS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b), 363(f) and 363(m); (C) ASSUMING AND ASSIGNING CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO BANKRUPTCY CODE SECTION 365; AND, (D) GRANTING RELATED RELIEF**

BEARCAT ENERGY, LLC, Debtor-in-Possession herein ("Debtor"), through its undersigned counsel, respectfully moves this Court for an Order (A) Approving Purchase and Sale Agreement and Authorizing the Sale of Substantially All of the Debtor's Assets; (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances and Other Interests Pursuant to 11 U.S.C. §§ 363(b), 363(f) and 363(m); (C) Assuming and Assigning Certain Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365; and, (D) Granting Related Relief, and states as follows:

**Preliminary Statement**

1. By this Sale Motion, the Debtor seeks approval of the sale of substantially all of the assets of the Debtor (the "Purchased Assets") to the Purchaser (defined below), pursuant to the Purchase and Sale Agreement ("Agreement"). The proposed Agreement contemplates that the Purchased Assets will be sold free and clear of liens, claims, encumbrances, rights, and other interests other than those liens and interests expressly permitted under the Agreement. A copy of the Agreement is attached hereto as **Exhibit 1** and is incorporated herein.

2. As discussed below, the Debtor's sale process is in the best interests of the Debtor and its estate and creditors. The Sale will provide for the payment of the sum of $3,900,000 in cash.

## Jurisdiction and Venue

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief sought herein are sections 363, 365, 1107, and 1108 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Colorado (the "Local Rules").

## General Background

6. The Debtor filed for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on March 14, 2017 (the "Petition Date"), and is operating as a Debtor-in-Possession. 11 U.S.C. §§1107 & 1108.

7. No unsecured creditors committee ("Committee") has been appointed by the Office of the U.S. Trustee.

8. No request has been made for the appointment of a trustee or an examiner in this case.

9. The Debtor owns many coal bed methane wells, equipment and related fixtures located in the State of Wyoming. The Debtor's gas wells are currently shut in and not producing. The Debtor has many creditors, including trade vendors, licensing authorities and taxing authorities.

10. The Debtor also has approximately 376 non-residential real property leases. A list of such Leases is as Exhibit A to the Agreement. These Leases together with the Debtor's gas wells are material assets of the bankruptcy estate.

## Prepetition Marketing and Sale Efforts

11. The Debtor commenced the process of evaluating restructuring and sale options in early 2016. The Debtor marketed itself to various suitors when the Debtor forecasted that it would not have sufficient cash from operations to meet its ongoing needs.

12. The Debtor contacted two principal buyers in the summer of 2016. In the fall of 2016, the Debtor selected one of the prospective buyers, Carbon Creek Energy ("Carbon Creek"). The Debtor then made efforts to consummate a sale with Carbon

12. (cont.) Creek. However, the Debtors efforts stalled due to various factors, including the collection efforts of its creditors seizing a substantial amount of cash in September of 2016. Carbon Creek then withdrew its offer to purchase substantially all of the Debtor's assets by December 2016.

13. From and after January 2017, the Debtor turned to 1st NRG Wyoming, Inc. ("1st NRG") as another prospective buyer. 1st NRG operates other gas wells at or around the Debtor's wells. 1st NRG also has its own midstream contracts for the transmission of the natural gas as well as compression facilities to increase the density of the gas.

14. The Debtor then spent several months pre-petition negotiating with 1st NRG over the terms of a purchase of substantially all of the Debtor's assets.

15. Ultimately, after extensive negotiations, the Debtor and 1st NRG (the "Purchaser" entered into a Purchase and Sale Agreement (the "Agreement"). As noted above, the consideration for the purchase of the Purchased Assets under the Agreement is the sum of $3,900,000 in cash.

## Sale of the Purchased Assets

16. The Debtor seeks approval of the sale of substantially all of its assets, including, *inter alia*, unexpired leases, unexpired subleases and executory contracts and personal property which include the Leases, the Lands, the Wells, and the Records, as more fully set forth in the Agreement (the "Purchased Assets").

17. Pursuant to the Agreement, the Debtor shall sell the Purchased Assets in a two step transaction. Commencing on the execution of the Agreement, the Purchaser has been conducting its Due Diligence of the Purchased Assets. Such Due Diligence Period shall end on the 45th day after this Court approves the Agreement. At the conclusion of the Due Diligence Period, the Purchaser shall pay the Debtor $2,900,000 in cash (the "Initial Closing").

18. From and after the Initial Closing, until one year thereafter, the Purchaser shall operate the Purchased Assets pursuant to a Joint Operating Agreement. The intent of such operations is for the Purchaser to verify that the Debtor's Wells and Leases can produce natural gas at sufficient levels. Similarly, the Debtor shall pursue the release of approximately $1,400,000 in bond funds during this period. The Purchaser shall ultimately assume the bonding responsibility for the Purchased Assets. Once the Purchaser has sufficient bonding in place, the Debtor shall surrender its bond funds to the Purchaser.

19. At the conclusion of one year after the Initial Closing, the Debtor and the Purchaser shall conduct a final closing on the sale of the Purchased Assets (the "Second

Closing"). At the second closing, the Purchaser shall pay the Debtor an additional $1,000,000 for the Purchased Assets. The Joint Operating Agreement shall then be assigned to the Purchaser along with the final assignment of the Purchased Assets.

20. In light of the extensive marketing process already undertaken and based upon the current financial condition of the business, the Debtor believes that the Purchased Assets have been offered for sale in an effort to achieve the highest and best price, as well as to provide a meaningful return to the creditors of the Debtor.

## Continued Marketing Process

21. While the pre and post-petition marketing and sale process was thorough, as discussed above, the Debtor will send notice of this Sale Motion to all parties that the Debtor believes may be potentially interested in acquiring the Purchased Assets.

22. The Debtor has also established a document depository (electronically) which holds a significant amount of information on the Purchased Assets. The Debtor has provided additional prospective buyers access to these documents subject to a confidentiality agreement. The Debtor will continue its marketing efforts post-petition. To the extent any interested party desires to submit a competing bid for the Purchased Assets, the Debtor will provide access to its document depository to assist with such party's due diligence. The Debtor will continue to respond to inquiries from prospective buyers through the deadline to object to this Motion.

23. Should other prospective buyers tender competing bids for the Purchased Assets, the Debtor will seek to hold this Motion in abeyance while it files an appropriate motion to set up bidding procedures and an auction process.

## Agreement with Purchaser

24. The Debtor believes that the consummation of the Sale to the Purchaser or other successful bidder will provide its creditors and other stakeholders with the best opportunity possible for maximizing the value of the Purchased Assets.

25. The key terms of the Agreement and the proposed Sale Order, are summarized below. The description below only summarizes certain provisions of the Agreement and the Sale Order as a convenience to the Court and parties in interest, and the terms of the Agreement control in the event of any inconsistency.

   a. **Purchase Price.** The total consideration to be paid by Purchaser to Debtor for the Purchased Assets shall be $3,900,000 in cash. *See Agreement § 1.02.* The Purchaser shall pay $2,900,000 within 45 days after Court approval at the Initial Closing and $1,000,000 at the Second Closing as defined in the Agreement. *Id.*

b. **Purchased Assets.** The Purchased Assets include, but are not limited to, the following:

　　i. the hydrocarbon leases described in Exhibit A to the Agreement ("Leases") and all of the lands covered by the Leases (the "Leased Lands");

　　ii. all existing and effective unitization, pooling, and communitization agreements, declarations, and orders covering any of the lands covered by the Leases (such lands, together with all other lands pooled, unitized, or communitized under such agreements, declarations and orders are referred to as the "Lands");

　　iii. the wells identified on Exhibit B to the Agreement (the "Wells") and the equipment associated therewith including without limitation, casing, tubing, pumping units, motors, pipelines, gathering lines, power lines, fixtures and all other machinery, equipment, inventory, ancillary facilities and other physical features located on the Leased Lands as of the Second Closing and used in connection with the operations applicable to the Wells (collectively the "Equipment"). The Equipment does not include (i) any vehicles, tools, pulling machines, warehouse stock, equipment or material temporarily located on the Lands; (ii) any leased personal property located on the Lands; or (iii) any equipment, pipelines, fixtures, facilities or interest in land owned by any contractor, purchaser or transporter of oil or gas from the Lands; the Equipment shall specifically include all pipelines, rights of way and associated equipment used in the disposal of water produced from the operations of the applicable Wells; and

　　iv. to the extent transferable and in the possession of the Debtor all of the Debtor's land records, lease records, well files, division order files, contract files, title records and all geological, geophysical, production, engineering and other technical data and other records relating to the items described in Section 1.01(a) through (c) of the Agreement, but excluding any information covered by the attorney-client or attorney work-product privilege (other than title opinions) or other confidentiality restrictions that prevent their disclosure to Purchaser (the "Records"). *See Agreement, §1.1.*

c. **Identity of Purchaser.** The Purchaser is 1st NRG Wyoming, Inc.

d. **Assumption of Executory Contracts and Unexpired Leases.** The proposed sale contemplates that the Debtor may assume and assign to the Purchaser certain of the executory contracts and unexpired leases associated with the Purchased Assets (i.e., the Leases and the Lands). *See* Agreement § 1.01. The Purchaser is responsible for paying all cure payments to the parties to the Leases and the Lands at the Initial Closing.

e. **Representations, Warranties and Covenants**. The Debtor made various representations customary for a transaction of this kind including, but not limited to, those relating to organization and good standing, authorization and validity, foreign qualification, absence of conflicts, litigation, compliance with legal requirements, environmental matters, title to and use of property, contracts, and financial statements and reports. *See* Agreement § 4.01. The Purchaser has made certain representations, among others, relating to organization, good standing and authorization, absence of conflict, and absence of broker's or finder's fee. *See* Agreement § 4.02.

f. **Conditions.** The Closing is conditioned upon the occurrence of certain events customary for transactions of this kind, including the truthfulness of all representations and warranties, and all consents and approvals, including approvals of the Bankruptcy Court, having been obtained. *See* Agreement, Articles V, VI, and VII.

g. **Rule 6004/6006 Waiver.** The proposed Sale Order provides that, upon entry, the Sale Order will be immediately enforceable, notwithstanding Bankruptcy Rules 6004 and 6006. *See* Sale Order p. 10. As discussed herein, the sale and prompt consummation thereof are in the best interest of the Debtor and its estate in order to maintain and otherwise maximize the value of the Debtor's assets for the benefit of the estate and its stakeholders and to comply with certain timing deadlines as discussed above.

h. **Successor Liability Findings**. The Sale Order provides that the Purchaser and its employees, officers, directors, advisors, lenders, affiliates, owners and successors and assigns shall not have any successor or vicarious liabilities. *See* Sale Order, pp. 7.

i. **Record Transfer and Access.** The Agreement provides for the transfer to the Purchaser of all Files and Records. *See* Agreement § 1.01.

j. **Indemnification.** The Agreement provides that the Purchaser shall indemnify and hold the Debtor harmless and against any and all losses, liabilities, damages, obligations, costs and expenses (including legal and other similar expenses) (collectively, "**Damages**") from, resulting by reason of or arising in connection with, among other things, the Purchaser's

        operation of the Purchased Assets during the period between the Initial Closing and the Second Closing. *See Agreement, Article X.*

26. The Debtor believes that the sale of the Purchased Assets to the Purchaser is in the best interests of the Debtor's estate and its creditors. Moreover, the Debtor negotiated the Agreement directly with the Purchaser and did not use a third party broker to assist with the transaction. Thus, the Debtor will not incur any costs of commissions on the Purchase Price, resulting in a greater return to creditors.

27. The Debtor has examined the alternatives to a sale of the Purchased Assets and has determined that, in light of the Debtor's financial situation, and value of the Purchased Assets, a more viable alternative to sale of the Purchased Assets does not exist. The Debtor determined that the sale of the Purchased Assets optimizes value for its estate and creditors.

28. For the reasons stated above, and in light of the obvious benefits to the estate, the Debtor has determined, in the exercise of its business judgment, to consummate the proposal submitted under the Agreement with the Purchaser or, if applicable, another bidder in the event that the Debtor receives a higher or otherwise better bid to the transaction set forth in the Agreement.

## Relief Requested

29. Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

30. A sale of the Debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for doing so. *See, e.g., In re Allen*, 607 Fed.Appx. 840, No. 14-1242 (10th Cir. 2015) (citing *In re Caste, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004); *In re Martin*, 91 F.3d 389, 395 (3rd Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir. 1983).

31. The Debtor has proposed the sale of the Purchased Assets after thorough consideration of all viable alternatives and has concluded that the sale is supported by many sound business reasons. The Debtor has extensively marketed the Purchased Assets as described above to maximize the purchase price realized from the sale of the Purchased Assets.

32. The Debtor has been contacted by other potential interested parties for the Purchased Assets. To the extent such parties desire to submit a bid for the Purchased Assets, the Debtor will provide them with a copy of this Sale Motion and/or notice thereof, as well as access to the Debtor's records for their due diligence needs, subject only to a non-disclosure agreement as the Debtor's records, trade methods and trade secrets are confidential.

33. Based on the foregoing, the sale of the Purchased Assets is supported by sound business reasons and is in the best interests of the Debtor and its estate. Accordingly, the Debtor requests approval under section 363(b) of the Bankruptcy Code of the Sale to the Purchaser or other Successful Bidder, as set forth herein.

**The Proposed Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code for a Sale Free and Clear of Liens, Claims, and Interests**

34. Section 363(f) of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such Property of an entity other than the estate, only if -
(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2)     such entity consents;
(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4)     such interest is in a bona fide dispute; or
(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

35. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Purchased Assets free and clear of all of the applicable liens, claims and encumbrances, except with respect to any liens, claims and encumbrances permitted under the Agreement. *See Citicorp Homeowners Services, Inc. v. Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

36. The Debtor submits that each lien, claim, and encumbrance that is not an assumed liability satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such lien, claim, or encumbrance will be adequately protected by either being paid in full at the time of closing, or by having it attach to the sale proceeds, subject to any claims and defenses the Debtor may possess with respect thereto.

37. The Debtor accordingly requests authority to convey the Purchased Assets to the Purchaser free and clear of all liens, claims, and encumbrances except for the liens, claims, and encumbrances that are expressly permitted under the terms of the Agreement, with such liens, claims, and encumbrances to attach to the sale proceeds, with the same validity (or invalidity), priority and perfection as existed immediately prior to the Sale, subject to the terms of the Agreement and the Sale Order.

38. Accordingly, this Court should approve the sale of the Purchased Assets to the Purchaser or other successful bidder free and clear of liens, claims, and encumbrances under Bankruptcy Code section 363(f), and any potential claimants should be compelled to look exclusively to the proceeds of the sale for satisfaction of their claims.

### Good Faith Under Section 363(m) of the Bankruptcy Code; Sale Not In Violation of Section 363(n) of the Bankruptcy Code

39. Section 363(m) of the Bankruptcy Code provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of Property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such Property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

40. Section 363(n) of the Bankruptcy Code, among other things, provides, in turn, that a trustee may avoid a sale under such section if the sale price was controlled by an agreement among potential bidders at the sale. *See* 11 U.S.C. § 363(n). Although the Bankruptcy Code does not define "good faith," the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir. 1986), held that:

[t]he requirement that a Buyer act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a Buyer's good faith status at a judicial sale involves fraud, collusion between the Buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted).

41. The Agreement was negotiated at arms' length and the Purchaser has acted in good faith, without collusion or fraud of any kind, and in compliance with the *Abbotts Dairies* standards. Neither the Debtor nor the Purchaser (to the best of the Debtor's

knowledge) has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or otherwise implicate section 363(n) of the Bankruptcy Code with respect to the consummation of the Sale or the transfer of the Purchased Assets to the Purchaser.

42. In addition, if a party other than the Purchaser is the successful purchaser, the Debtor intends to make an appropriate showing at the Sale Hearing that the purchase agreement with the other successful buyer is a negotiated, arms' length transaction, in which the successful buyer at all times has acted in good faith under and otherwise in accordance with such standards.

43. The Debtor therefore requests that the Court find that the Purchaser or the successful bidder has purchased the Purchased Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code and is entitled to the protections of sections 363(m) and (n) of the Bankruptcy Code.

### Authorization of Assumption and Assignment of Assigned Contracts

44. As required by the Agreement, and in order to enhance the value to the Debtor's estate, the Debtor requests approval of the assumption and assignment of certain unexpired hydrocarbon leases and all of the lands covered by the leases identified as the Leases (Exhibit A to the Agreement) to the Purchaser or the other successful buyer upon the closing of the transactions contemplated under the Agreement.

45. The Debtor also requests approval of the assumption and assignment to Purchaser of all existing and effective unitization, pooling, and communitization agreements, declarations, and orders covering any of the lands covered by the Leases (such lands, together with all other lands pooled, unitized or communitized under such agreements, declarations, and orders, are referred to as the "Lands" in the Agreement). The Leases and the Lands are collectively referred to herein as the "Purchased Contracts."

46. Pursuant to the Agreement, the Purchaser is responsible for payment of all cure amounts required to be paid to the counterparties to the Purchased Contracts assumed and assigned (each a "Counterparty" and collectively, the "Counterparties") under section 365(b)(1) of the Bankruptcy Code.

47. The Debtor therefore requests that the Sale Order provide that the Purchased Contracts will be assigned to, and remain in full force and effect for the benefit of, the Purchaser or the other successful bidder, notwithstanding any provisions in the Purchased Contracts, including those described in sections 365(b)(2) and (f)(1) and (3) of the Bankruptcy Code, that prohibit such assignment.

48. Section 365(f) of the Bankruptcy Code provides, in pertinent part, that:

>The trustee may assign an executory contract or unexpired lease of the debtor only if -
>
>(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

49. Under section 365(a), a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee --
(A)  cures, or provides adequate assurance that the trustee will promptly cure, such default;
(B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
(C)  provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

50. Although section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor in possession's decision to assume an executory contract, courts have consistently applied a "business judgment" test when reviewing such a decision. *See, e.g.*, *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 318 U.S. 523, 550 (1953); *Matter of Talco, Inc.*, 558 F.2d 1369, 1173 (10th Cir. 1977); *In re J.H. Land & Cattle Co., Inc.,* 8 B.R. 237, 238 (Bankr. W.D. Okla. 1981); *In re Crescent Oil Co., Inc.*, 2010 WL 2721878, 3 (Bankr. D. Kan. 2010); *see also Nat'l Labor Relations Bd. v. Bildisco and Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3rd Cir. 1982) (stating that "the usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test").

51. The business judgment standard mandates that a court approve a debtor's business decision unless the decision is the product of "bad faith, whim or caprice." *Lubrizon Enters v. Richmond Metal Finishes*, 756 F.2d 1043, 1047 (4th Cir. 1980).

52. A debtor satisfies the "business judgment" test when it determines, in good faith, that assumption of an executory contract will benefit the estate and the unsecured creditors. *In re FCX, Inc.,* 60 B.R. 405, 411 (Bankr. E.D.N.Y. 1986). The potential assumption and assignment of the Purchased Contracts set forth in the Agreement will be a necessary part of the deal that Debtor has struck with the Purchaser or other successful buyer and, as stated above, will benefit the estate of Debtor.

53. Counterparties to the Purchased Contracts will receive notice of this Motion and have opportunity to file an objection to the proposed assumption and assignment. Such parties may also tender their proposed cure amounts to the Purchaser.

54. To the extent no objection is filed with regard to the Debtor's assumption and assignment of the Purchased Contracts, the Purchaser shall pay all necessary amounts to cure such obligations to the counterparties upon the Initial Closing under the Agreement (the "Cure Amounts"). The payment of the Cure Amounts (or a different amount either agreed to by the Debtor, or resolved by the Court as a result of a timely-filed objection filed by a contract or lease counterparty) will be in full and final satisfaction of all obligations to cure defaults and compensate the counterparties for any pecuniary losses under such contracts or leases pursuant to section 365(b)(1) of the Bankruptcy Code, unless the Debtor determines (with the consent of the Purchaser or successful buyer) that a particular lease or contract is not truly executory, and does not need to be cured to transfer the lease or contract to the successful buyer or Purchaser.

55. Cure Amounts disputed by any Counterparty will either be considered by the Court either at the hearing to approve this Motion or at some later date as may be scheduled by the Court to determine contested objections regarding Cure Amounts, that have not been resolved in advance or at the hearing on this Motion.

56. The Purchaser or other successful buyer is responsible for providing evidence of "adequate assurances of future performance" to the extent required in connection with the assumption and assignment of any of the Purchased Contracts, including the Leases and Lands. The meaning of "adequate assurance of future performance" for the purpose of the assumption of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.*), 103 B.R. 524, 538 (Bankr. D.N.J. 1989). *See also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that

debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985).

57. If necessary, the Purchaser or the other successful buyer shall provide evidence of its ability to provide adequate assurances to Counterparties to the Purchased Contracts at the hearing to approve this Motion. Moreover, any successful buyer will be required to provide evidence that the buyer can provide adequate assurance of future performance with respect to Leases and Lands identified as Purchased Contracts at the time it submits its offer to purchase the Purchased Assets.

### Notice

58. A copy of this Motion will be provided to (a) the Office of the United States Trustee; (b) the twenty largest unsecured creditors of the Debtors; (c) the Committee; (d) all parties who are known by the Debtor to assert liens with respect to the Purchased Assets, if any; and, (e) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtor shall also provide notice to all creditors and interested parties, including all of those parties to the Purchased Contracts identified on Exhibit A to the Agreement.

59. The Debtor requests, pursuant to Bankruptcy Rules 6004(h) and 6006(d), that the order approving this Sale Motion become effective immediately upon its entry.

### Conclusion

60. The Debtor's proposed sale of the Purchased Assets as described in this Sale Motion is supported by sound business reasons, as set forth herein. The proposed sale is proper, necessary and serves the best interests of the Debtor, its estate and creditors, and all parties in interests. The Debtor thus requests that the Court approve the proposed Sale of the Purchased Assets free and clear of all interests, liens, claims, and encumbrances, as requested, to the Purchaser or other Successful Buyer.

WHEREFORE, the Debtor respectfully requests that this Court grant this Sale Motion by entering the attached proposed order: (i) approving the Agreement and authorizing the sale of the Purchased Assets to the Purchaser or other successful buyer; (ii) authorizing the sale of the Purchased Assets free and clear of all liens, claims, rights, encumbrances and other interests; (iii) authorizing the assumption and assignment of Leases and Lands that are identified as Purchased Contracts; (iv) approving the form and manner of notice of this Sale Motion, and of the proposed sale and the assumption and assignment of Leases and Lands that are identified as Purchased Contracts; and, (v) granting such other and further relief as is just and proper.

Dated June 13, 2017.                    Respectfully submitted,
                                        BUECHLER & GARBER, LLC

*/s/ Kenneth J. Buechler*

Kenneth J. Buechler, #30906
999 18th Street, Suite 1230-S
Denver, Colorado 80202
Tel:720-381-0045
Fax: 720-381-0382
ken@BandGlawoffice.com
ATTORNEYS FOR THE DEBTOR

-14-